UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ERNEST P. SANCHEZ,
individually and on behalf
of all others similarly
situated,

        Plaintiff,

  v.

AVIVA LIFE AND ANNUITY
COMPANY, a foreign entity of
unknown origin; LOOMIS WEALTH
SOLUTIONS, INC., an Illinois
corporation; LAWRENCE LELAND
LOOMIS, an individual; et al.,

        Defendants.

NO. CIV. S-09-1454 FCD/DAD

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Aviva Life and Annuity Company's ("Aviva") motion to dismiss plaintiff Ernest P. Sanchez' first amended complaint, alleging Aviva conspired with the co-defendants[1] to misrepresent and sell sham investments to

---

[1] Plaintiff also names as defendants Loomis Wealth Solutions, Inc., Lawrence Leland Loomis, Naras Secured Fund #2, LLC, Lismar Financial Services, LLC, and Nationwide Lending Group. To date, while these defendants have been served, none of them has appeared in the action.

1

plaintiff and a class of similarly situated persons whom plaintiff seeks to represent in this putative class action.[2]  In the first amended complaint, plaintiff alleges claims for (1) breach of fiduciary duty; (2) negligence; (3) rescission for mistake and fraud; (4) violation of California' Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*; and (6) aiding and abetting.  (First Am. Compl. ["FAC"], filed Aug. 28, 2009 [Docket #53], ¶s 13-28, 32-71.)

All of these claims hinge on the allegation that Aviva conspired with the co-defendants to defraud plaintiff and the class through a "Ponzi" investment scheme called the "Income Advantage Plan."  Aviva argues, however, that plaintiff fails to allege adequate facts to establish Aviva's purported involvement in the alleged conspiracy, and therefore, all of plaintiff's claims must be dismissed.  Alternatively, Aviva argues that even if plaintiff has sufficiently alleged a conspiracy, plaintiff's first, fifth and sixth causes of action fail to state cognizable claims against Aviva because (1) Aviva, as a life insurer, is not a fiduciary to its insured as a matter of law; (2) life insurance is not a "good" or "service" under the CLRA; and (3) a corporate principal cannot aid and abet the commission of a tort by a corporate agent as a matter of law.

---

[2]   Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

Because the court finds as a threshold matter that plaintiff's conspiracy allegations are deficient, requiring dismissal of all of plaintiff's claims, the court does not reach Aviva's alternative arguments with respect to certain specific claims. Thus, for the reasons set forth below, the court GRANTS Aviva's motion to dismiss. Plaintiff's complaint against Aviva is dismissed in its entirety. However, the court grants plaintiff one final opportunity to amend his complaint to adequately allege Aviva's role in the claimed conspiracy.

**BACKGROUND**

Plaintiff alleges that defendant Lawrence Leland Loomis ("Loomis") was an authorized insurance agent for Aviva and marketed and sold various Aviva insurance products to individuals. (FAC at ¶¶ 13, 15.) Plaintiff also claims that Loomis was somehow monetarily indebted to Aviva. (Id. at ¶ 16.) Beginning around 2006, plaintiff alleges Loomis "concocted a sham investment scheme" called the "Income Advantage Plan," which in a "series of communications," he explained to Aviva. (Id. at ¶s 16-17.) Loomis and his company, Loomis Wealth Solutions ("LWS"), presented the plan to potential investors through free seminars, allegedly "at the behest of, and with the involvement and knowledge of, AVIVA," (id. at ¶ 18), during which investors were allegedly "made the same promises, [and] relied upon the same oral and written representations made by LOOMIS, AVIVA and their co-conspirators." (Id. at ¶ 20.) During the first step of the purported investment scheme, Loomis and LWS allegedly sold investors "free" life insurance from Aviva "at no cost because the 'Income Advantage Plan' would pay all of their

3

1 premiums." (Id. at ¶ 19.)  Such premiums could purportedly be
2 more than $1,000 per month. (Id.)  Plaintiff claims that
3 defendants were able to finance the initial investment in "free"
4 life insurance because Aviva allegedly "was secretly funneling
5 $25,000 kickbacks to its co-conspirators for each policy sold."
6 (Id. at ¶ 20.)

7     During the next step of the Income Advantage Plan, Loomis
8 and LWS allegedly sold investors shares of defendant NARAS
9 Secured Fund #2, LLC ("NARAS"), which plaintiff alleges was
10 administered, funded and managed by defendants Lismar Financial
11 Services LLC or Nationwide Lending Group. (Id. at ¶ 24.)
12 According to the FAC, "[d]efendants represented that
13 the pooled money in the NARAS Fund was to be loaned out to
14 subprime borrowers at 14%.  This supposedly enabled defendants to
15 return 12% to investors, clearing a modest 2% as profit
16 for the NARAS fund." (Id. at ¶ 25.)  The FAC nowhere alleges
17 that Aviva had any involvement with this so-called second step of
18 the Income Advantage Plan.

19     In or around 2008, investors allegedly learned that their
20 investments "were gone," and that they would have to pay their
21 own premiums to maintain their Aviva life insurance policies.
22 (Id. at ¶ 27.)  There is no allegation that plaintiff or any
23 other putative class member failed to receive an Aviva policy or
24 that any claim or policy was mishandled or wrongfully denied.

25     Plaintiff allegedly attended a Loomis seminar in or about
26 2007. (Id. at ¶ 28.)  He claims that he agreed to purchase the
27 "free" life insurance offered by Loomis, and that he invested
28 approximately $50,000 in the NARAS fund. (Id.)  Thereafter,

4

1 according to the FAC, plaintiff learned "that his entire
2 investment was lost, along with the promised profits." (Id.)
3     On April 15, 2009, based on the above allegations, plaintiff
4 commenced this putative class action in Sacramento County
5 Superior Court, alleging causes of action for breach of fiduciary
6 duty, negligence, rescission for mistake and fraud, violation of
7 the UCL, and violation of the CLRA.  Plaintiff sought
8 compensatory and punitive damages, rescission, restitution and
9 injunctive relief, together with costs and attorneys' fees.
10     On May 27, 2009, Aviva removed the case to this court
11 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332.
12 Thereafter, on July 16, 2009, this court denied plaintiff's
13 motion to remand.  Aviva then moved to dismiss plaintiff's
14 original complaint.  Rather than opposing the motion, plaintiff
15 filed the FAC on August 28, 2009, adding an aiding and abetting
16 cause of action against Aviva and narrowing the putative class to
17 include only "California residents who participated in the Income
18 Advantage Plan and either purchased life insurance through AVIVA
19 or one of its predecessors or purchased shares of the
20 NARAS fund, or both."  (Id. at ¶ 29.)
21     Aviva contends these amendments failed to cure the
22 complaint's defects, and thus, it now moves to dismiss the FAC on
23 grounds similar to those asserted in its original motion to
24 dismiss the complaint.

**STANDARD**

26     Under Federal Rule of Civil Procedure 8(a), a pleading must
27 contain "a short and plain statement of the claim showing that
28 the pleader is entitled to relief."  See Ashcroft v. Iqbal, 129

S. Ct. 1937, 1949 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at 1949.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action." <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at 1949 (*citing* <u>Twombly</u>, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. <u>Id.</u> at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 1950.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>Mir v. Little Co. Of Mary Hospital</u>, 844 F.2d 646, 649 (9th Cir. 1988).

**ANALYSIS**

Aviva moves to dismiss the FAC, arguing plaintiff fails to plead sufficient facts to establish Aviva's knowledge of or

7

participation in Loomis' Ponzi scheme.  Rather, Aviva contends the FAC pleads only (1) bare conclusions that the court cannot assume are true, or (2) factual allegations that are equally consistent with a "conspiracy" as with an obvious--and lawful--alternative explanation.  Such allegations Aviva maintains are inadequate to state a cognizable conspiracy claim under the Supreme Court's recent decisions in Twombly and Iqbal.

Plaintiff makes the following general allegations with respect to Aviva's alleged knowledge and participation in the conspiracy: (1) "LOOMIS concocted a sham investment scheme," and claims that, "in a series of communications with AVIVA, LOOMIS explained his plan to AVIVA" (FAC at ¶ 17) and (2) Loomis and LWS allegedly presented their scheme during free seminars to potential investors "at the behest of, and with the involvement and knowledge of, AVIVA," (id. at ¶ 18), during which investors "were made the same promises, [and] relied upon the same oral and written representations made by LOOMIS, AVIVA and their co-conspirators."  (Id. at ¶ 20.)  These conclusory assertions, however, devoid of any actual facts, are insufficient to establish Aviva's knowledge of or involvement in any conspiracy.  Iqbal, 129 S. Ct. at 1949.

Plaintiff's bare allegations of conspiracy fail to specify "who, did what, to whom (or with whom), where, and when?" Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047-48 (9th Cir. 2008) (recognizing that a "naked assertion of conspiracy" does not satisfy Twombly).  Specifically, the FAC fails to identify what Loomis allegedly told Aviva during the purported (but nonspecific) "series of communications," and fails to specify or

describe Aviva's supposed "involvement" with the Income Advantage Plan seminars. The FAC does not reveal how Aviva came to know about Loomis' "sham investment scheme" or how Aviva agreed to participate in the scheme and/or acquiesced in it, nor does the complaint describe any specific role Aviva played in the free seminars, where potential investors were allegedly defrauded by representations made by Aviva and the co-conspirators. Indeed, the complaint does not contain any facts describing what *Aviva* purportedly promised investors in these seminars.

Thus, plaintiff's conclusory allegations, set forth above, are not entitled to a presumption of truth, and they must be disregarded in determining whether the FAC alleges sufficient facts against Aviva. Twombly, 550 U.S. at 559 (holding that a plaintiff must plead specific facts, not conclusions, suggesting that his conspiracy claim is at least plausible); Kendall, 518 F.3d at 1048 (dismissing a conspiracy claim because the complaint pled only ultimate facts-- the conspiracy--without any supporting evidentiary facts).

Such is similarly the case here. With respect to the FAC's true, *factual* allegations, plaintiff asserts: (1) Loomis was an authorized agent of Aviva and "was the primary, and in many cases the sole, intermediary between an applicant and AVIVA" (FAC at ¶s 13, 15); (2) Loomis allegedly marketed and sold various insurance products, "on AVIVA's behalf as its authorized agent," and received significant monetary compensation from Aviva (Id. at ¶ 15); and (3) Loomis was monetarily indebted to Aviva, and Aviva "secretly funnel[ed] $25,000 kickbacks to its co-conspirators for each policy sold" (Id. at ¶s 16, 21). These

allegations, however, do not "plausibly suggest an entitlement to relief" because even if they are consistent with a conspiracy, they are equally consistent with an "obvious alternative explanation." Iqbal, 129 S. Ct. 1951. That alternative explanation is that Aviva had no knowledge of or involvement with the alleged Loomis investment scheme, but simply loaned or advanced operating funds to its sales agent, Loomis, and paid him commissions on the policies he sold. That type of innocent, legitimate business behavior does not support an inference of conspiracy. Kendall, 518 F.3d at 1048; See also In re Citric Acid Litig., 996 F. Supp. 951, 959 (N.D. Cal. 1998) (cooperation or association for a legitimate business purpose--that is, the mere opportunity to conspire--is insufficient to support an inference of conspiracy).

Accordingly, these factual allegations do not support conspiracy as a plausible conclusion. That Loomis was Aviva's agent, became indebted to the company, sold its insurance policies and received compensation for policy sales merely establishes the unremarkable proposition that Loomis was an authorized Aviva insurance agent, who received commissions for sales of its life insurance policies. While plaintiff seeks to portray the indebtedness and commission payments as nefarious, there is nothing atypical about an insurance company loaning or advancing operating funds to its sales agent and paying him commissions on policies sold. Because Aviva's alleged conduct is just as consistent with legitimate business behavior as with a conspiracy, its alleged loan and payments to Loomis do not support an inference of any unlawful agreement.

10

Therefore, the court must grant Aviva's motion to dismiss. Aviva asks that the court grant the dismissal with prejudice, arguing that (1) plaintiff has already had one opportunity to amend his complaint and even with the benefit of Aviva's prior motion to dismiss, plaintiff's allegations remain deficient; and (2) certain prior admissions by plaintiff as well as a declaration by a Special Federal Agent, in a related civil forfeiture action concerning the Loomis Ponzi scheme, demonstrate plaintiff cannot make the requisite allegations against Aviva. Aviva's arguments are unavailing. First, plaintiff filed the FAC as a matter of right. Under Federal Rule of Civil Procedure 15(a), plaintiff may amend his complaint "once as a matter of course at any time before a responsive pleading is served." A motion to dismiss pursuant to Rule 12(b)(6) is not a "responsive pleading" under Rule 15(a). See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). Moreover, because the filing of the FAC mooted Aviva's original motion to dismiss, plaintiff did not have the benefit of a ruling on Aviva's motion to dismiss. Plaintiff now has that ruling from the court and can attempt to amend his pleading to meet the legal standards set forth herein, provided he has *facts* to support a conspiracy claim against Aviva.

Second, the court must disregard Special Agent Kathleen Nicolls' declaration. Aviva submits the declaration, arguing it proves Aviva's lack of involvement in the Ponzi scheme because Nicolls does not mention Aviva's knowledge, agreement or participation in the scheme. However, on a Rule 12(b)(6) motion, the court may only consider the complaint, any exhibits thereto,

11

1  and matters which may be judicially noticed.  Mir, 844 F.3d at
2  649.  Contrary to Aviva's suggestion, the court cannot take
3  judicial notice of *the truth* of Nicolls' statements, even
4  assuming her declaration establishes Aviva's lack of
5  participation in the scheme.  The court must confine its review
6  to plaintiff's pleading.  Additionally, the court does not find
7  that plaintiff has made any conclusive admissions in other
8  submissions to the court which establish that Aviva was not part
9  of an illegal conspiracy.  Aviva cites certain statements by
10 plaintiff made on the motion to remand.  (Def.'s Mem. of P.& A.
11 in Supp. of MTD, filed Sept. 30, 2009, at 9-10 (citing
12 plaintiff's statement that Aviva "participated in the wrongdoing,
13 not by actually committing the tortious wrongs [itself], but by
14 agreeing to the course of wrongdoing" and plaintiff's "theory of
15 liability asserted against Aviva is a theory of vicarious
16 liability arising from Aviva's participation in a conspiracy with
17 the primary defendants Loomis and LWS.")  Aviva parses these
18 statements too narrowly; plaintiff did not concede that Aviva was
19 not part of the conspiracy.  Plaintiff only acknowledged that
20 Aviva was not a direct or primary actor in the wrongdoing.
21 Rather, plaintiff states his claims against Aviva hinge on a
22 claim of a conspiracy in which Aviva participated.
23     Ultimately, leave to amend must be freely given.  Fed. R.
24 Civ. P. 15(a).  However, the court has considered that Aviva made
25 essentially the same arguments in its original motion to dismiss,
26 which plaintiff had the benefit of reviewing prior to filing the
27 FAC.  As such, the court will permit plaintiff only one further
28 opportunity to amend his complaint to adequately allege Aviva's

12

knowledge of or participation in the alleged conspiracy.

## CONCLUSION

For the foregoing reasons, Aviva's motion to dismiss plaintiff's FAC, as asserted against Aviva, is GRANTED in its entirety.  Plaintiff is permitted one final opportunity to amend his complaint to allege facts, if any, to establish Aviva's knowledge of, or participation in, Loomis' Ponzi investment scheme.  Said amended pleading shall be filed and served within 20 days of the date of this Order.  Aviva shall have 30 days thereafter to file a response thereto.

IT IS SO ORDERED.

DATED: November 17, 2009

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE