UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ERNEST P. SANCHEZ,
individually and on behalf
of all others similarly
situated,

        NO. CIV. S-09-1454 FCD/DAD

    Plaintiff,

  v.                        MEMORANDUM AND ORDER

AVIVA LIFE AND ANNUITY
COMPANY, a foreign entity of
unknown origin; LOOMIS WEALTH
SOLUTIONS, INC., an Illinois
corporation; LAWRENCE LELAND
LOOMIS, an individual; et al.,

    Defendants.

----oo0oo----

    This matter is before the court on defendant Aviva Life and Annuity Company's ("Aviva") motion to dismiss plaintiff Ernest P. Sanchez' second amended complaint ("SAC"), alleging Aviva conspired with the co-defendants[1] to misrepresent and sell sham

---

[1] Plaintiff also names as defendants Loomis Wealth Solutions, Inc., Lawrence Leland Loomis, Naras Secured Fund #2, LLC, Lismar Financial Services, LLC, and Nationwide Lending Group. To date, while these defendants have been served, none of them has appeared in the action.

1

investments to plaintiff and a class of similarly situated persons whom plaintiff seeks to represent in this putative class action.[2]

In his second amended complaint, plaintiff alleges the same causes of action that appeared in his first amended complaint (First Am. Compl. ("FAC"), filed Aug. 28, 2009 (Docket #53)): (1) breach of fiduciary duty; (2) negligence; (3) rescission for mistake and fraud; (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*; and (6) aiding and abetting. (Second Am. Compl., filed April 2, 2010 (Docket #84), ¶¶ 41-80.)

As was the case with plaintiff's FAC, all of these causes of action hinge on the allegation that Aviva conspired with the co-defendants to defraud plaintiff and the class through a "Ponzi" investment scheme called the "Income Advantage Plan." In its motion to dismiss, Aviva argues that plaintiff's SAC fails to allege adequate facts to establish Aviva's alleged involvement in the Loomis conspiracy, and therefore, plaintiff's SAC must be dismissed. (Def.'s Mot Dismiss ("MTD"), filed May 3, 2010 (Docket # 87).) Alternatively, Aviva argues that even if plaintiff has sufficiently alleged a conspiracy, plaintiff's first, fifth and sixth causes of action fail to state cognizable claims against Aviva because (1) Aviva, as a life insurer, is not

---

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 230(g).

2

1 a fiduciary to its insured as a matter of law; (2) life insurance
2 is not a "good" or "service" under the CLRA; and (3) a corporate
3 principal cannot aid and abet the commission of a tort by a
4 corporate agent as a matter of law.
5     In its order granting Aviva's motion to dismiss plaintiff's
6 FAC, this court found, as a threshold matter, that plaintiff's
7 conspiracy allegations were factually deficient and ordered the
8 FAC dismissed.  (Mem. & Order on Pl.'s FAC ("Order"), filed Nov.
9 18, 2009 (Docket #71).)  In so ruling, the court did not reach
10 Aviva's alternative arguments with respect to the first, fifth
11 and sixth causes of action.  Because the court now finds that
12 plaintiff's SAC has cured the FAC's defective conspiracy
13 allegations, it addresses Aviva's alternative arguments with
14 respect to the specific causes of action.  For the reasons set
15 forth below, Aviva's motion to dismiss the first, fifth and sixth
16 causes of action is DENIED, GRANTED, and DENIED, respectively.

**BACKGROUND**

18     The court adopts the factual and procedural background set
19 forth in the Order addressing plaintiff's FAC.  (Id.)  Additional
20 relevant facts are discussed below:
21     Following this court's Order granting Aviva's motion to
22 dismiss, plaintiff filed his SAC on April 2, 2010.  In the SAC,
23 plaintiff describes in greater detail his allegations against
24 Aviva, specifically addressing the factual deficiencies
25 identified by the court in its Order.  Namely, plaintiff's SAC
26 proffers factual allegations regarding the particular nature and
27 logistics of the conspiracy (SAC ¶¶ 17-19, 21-22, 25-26), the
28 direct communication between Loomis and Aviva leading up to the

3

formation of the conspiracy and during the operation of the conspiracy (id. at ¶¶ 17-19, 25-26), the nature and mechanics of the investor seminars, in which plaintiff alleges Aviva played a pivotal role (id. at ¶¶ 21-22, 25), and the motives of the allegedly conspiring parties (id. at ¶¶ 16-18, 20, 28, 30.).

**STANDARD**

Although Aviva argues Federal Rules of Civil Procedure ("FRCP") 9(b) is the appropriate guideline by which to judge plaintiff's SAC, the court finds that FRCP 8(a) is the appropriate standard.  Pointing to the language of FRCP 9(b), Aviva interprets "all averments of fraud" to include any and all conspiracy claims and cites case law which it contends supports that position.  (MTD at 8.)  The cases relied on by Aviva, however, are factually distinguishable from the instant case and ultimately unavailing.  In Wasco, civil conspiracy was not an element of the plaintiff's claim, and both Neubronner and Moore involved securities fraud claims, not conspiracy claims.  Wasco Prods. v. Southwall Techs., Inc., 435 F.3d 989 (9th Cir. 2006); Neubronner v. Milken, 6 F.3d 666 (9th Cir. 1993); Moore v. Kayport Package Express, 885 F.2d 531 (9th Cir. 1989).  Hence, the courts' decisions to apply the heightened Rule 9(b) pleading standards in those cases is not binding on the present action. Moreover, this court is aware of no case law mandating the use of FRCP 9(b) in civil conspiracy complaints.  As was the case in the Order granting Aviva's motion to dismiss the FAC, this court applies FRCP Rule 8(a).

Under FRCP 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to

1  relief." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
2  Under notice pleading in federal court, the complaint must "give
3  the defendant fair notice of what the claim is and the grounds
4  upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544,
5  555 (2007) (internal quotations omitted).  "This simplified
6  notice pleading standard relies on liberal discovery rules and
7  summary judgment motions to define disputed facts and issues and
8  to dispose of unmeritorious claims." Swierkiewicz v. Sorema
9  N.A., 534 U.S. 506, 512 (2002).
10      On a motion to dismiss, the factual allegations of the
11 complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319,
12 322 (1972).  The court is bound to give plaintiff the benefit of
13 every reasonable inference to be drawn from the "well-pleaded"
14 allegations of the complaint. Retail Clerks Int'l Ass'n v.
15 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not
16 allege "'specific facts' beyond those necessary to state his
17 claim and the grounds showing entitlement to relief." Twombly,
18 550 U.S. at 570.  "A claim has facial plausibility when the
19 plaintiff pleads factual content that allows the court to draw
20 the reasonable inference that the defendant is liable for the
21 misconduct alleged." Iqbal, 129 S. Ct. at 1949.
22      Nevertheless, the court "need not assume the truth of legal
23 conclusions cast in the form of factual allegations." United
24 States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
25 Cir. 1986).  While Rule 8(a) does not require detailed factual
26 allegations, "it demands more than an unadorned, the defendant-
27 unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949.  A
28 pleading is insufficient if it offers mere "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (*citing* Twombly, 550 U.S. at 570). Only where a plaintiff has failed to "nudge [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. at 1952. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

**ANALYSIS**

**A. Conspiracy**

Aviva moves to dismiss plaintiff's SAC in its entirety, arguing that because the SAC fails to allege sufficient facts to support a conspiracy cause of action under Twombly and FRCP (9)(b), plaintiff's entire complaint should fail. More specifically, Aviva contends plaintiff's conspiracy cause of

6

1  action is plagued by the same factual inadequacies that led this
2  court to dismiss the FAC, and that the SAC fails to adequately
3  allege "Aviva's knowledge of, or participation in, [Loomis']
4  scheme."  (MTD at 9.)  Aviva argues that the SAC's factual
5  allegations are "speculative and far-fetched" (id.) and describes
6  them as "bare conclusions that are not to be assumed true," and,
7  "equally consistent with a 'conspiracy' as with an obvious,
8  lawful alternative explanation -- that Aviva had no knowledge of,
9  or involvement with, the alleged Loomis investment scheme, but
10 simply loaned or advanced operating funds to its sale agent and
11 paid him commissions on the policies he sold" (id. (citation
12 omitted)).  Such allegations Aviva maintains are inadequate to
13 state a cognizable conspiracy claim under the Supreme Court's
14 recent decisions in Twombly and Iqbal.
15     In addition to those facts proffered in the FAC, plaintiff's
16 SAC makes the following specific allegations with respect to
17 Aviva's knowledge and participation in the conspiracy:
18 (1) "Loomis concocted a sham investment scheme," and, "in a
19 series of communications with Aviva, Loomis explained his plan to
20 Aviva . . . [telling] Aviva that he has developed an investment
21 'system' that depended on the involvement of what appeared to be
22 a respectable institution such as Aviva and an apparently
23 legitimate low cost (or no cost) investment device such as
24 Aviva's life insurance products to lure unsuspecting investors
25 into a speculative real estate ponzi scheme" (SAC at ¶ 17);
26 (2) Aviva agreed to participate in the scheme and to pay Loomis a
27 $25,000 flat fee for each Aviva life insurance policy he sold,
28 contrary to industry custom (id. at 18); (3) Loomis and Loomis

7

Wealth Solutions allegedly presented their scheme during free seminars, attended by Aviva employees, executives and/or representatives (id. at ¶ 22), to potential investors "at the behest of, and with Aviva's express knowledge, participation, and consent," (id. at ¶ 21), during which investors "were made the same promises, [and] relied upon the same oral and written representations made by Loomis, Aviva and their co-conspirators" (id. at ¶ 23); (4) Aviva's presence at these seminars was "designed to lend credibility to the investment scheme in the eyes of the unsuspecting investors," and that, "Aviva representatives would answer any investor questions regarding the insurance portion of the scheme" (id. at 22); (5) at these seminars, Aviva agents distributed blank life insurance applications that potential applicants were instructed to sign and return to the Aviva agents, which were then allegedly tailored by Aviva agents and Loomis to meet the financial dictates of the scheme (id. at ¶ 25); (6) Kenneth Svean, not Loomis, was the agent of record on many of the insurance policies ostensibly sold by Loomis at these seminars (id. at ¶ 19); (7) Aviva accepted a large number of these "tailored" and "identical" applications without conducting an inspection report as part of its due diligence, "directly contrary to the normal customs and practice of the life insurance industry" and its own underwriting guidelines (id. at ¶¶ 26-27); and (8) Aviva allegedly engaged in these practices with full knowledge of Loomis' ponzi scheme in order to "recover from Loomis the money that they claim he owed them from his prior wrongful scheme," and to "procure long-term customer[s] who had, at the very least,

8

purchased a very expensive insurance policy that was very profitable to Aviva over the long term." (id. at ¶ 30.)

The court finds that these factual allegations, when taken in the aggregate, assumed true as the court must on this motion (Bento, 405 U.S. at 322) and tested against FRCP 8(a) and the Twombly and Iqbal pleading standards, sufficient to withstand Aviva's motion to dismiss. As evidenced above, plaintiff has cured the FAC's factual deficiencies by proffering detailed allegations regarding the nature of the conspiracy, the communication and interaction between Aviva and Loomis, the nature and mechanics of the investor seminars, and the motives of the allegedly conspiring parties. Moreover, plaintiff's SAC addresses each of the factual inadequacies highlighted by the court in its Order granting Aviva's first motion to dismiss. (Order at 8-9.)

As previously noted, this court finds FRCP Rule 8(a)'s notice pleading requirements are the appropriate standard by which to judge the adequacy of plaintiff's complaint. Using Rule 8(a) as the standard, plaintiff alleges sufficient facts to give his conspiracy cause of action facial plausibility. Iqbal, 129 S. Ct. At 1949 (citing Twombly, 550 U.S. at 570). The factual allegations of the SAC allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Additionally, there is no doubt given the breadth and specificity of facts alleged by plaintiff that the SAC gives Aviva "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555.

9

Nevertheless, Aviva argues plaintiff's SAC is plead "exclusively on information and belief" and claims that the use of such a pleading device is "a tacit concession that [plaintiff] is aware of no evidence to support [his allegations]." (MTD at 1-2.)  However, Aviva cites no case law to support the proposition that factual allegations plead on information and belief are not entitled to the same presumption of truth as allegations plead in other ways when Rule 8(a) is the applicable pleading standard.  Furthermore, even if this court were to apply the heightened pleading standard of Rule 9(b), plaintiff's allegations plead on information and belief would still likely withstand Aviva's motion to dismiss, as the nature of the allegations at issue fall within a recognized exception to the general rule that pleading on information and belief is not allowed under Rule 9(b).[3]

Finally, Aviva's assertion that the additional facts presented by the SAC are equally consistent with legitimate business practices as they are with illegal conspiracy is without merit.  When taken as true, the factual allegations presented by the SAC are wholly inconsistent with legitimate and lawful business practices.  The notion that a large insurance company, as a matter of course and with completely lawful intent, would

---

[3] "Allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b). However, an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing. In such cases, a complaint based on information and belief is sufficient if it includes a statement of the facts upon which the belief is based." Zatkin v. Primuth, 551 F. Supp. 39, 42 (D.C. Cal. 1982).

10

prompt applicants to sign a blank application, subsequently tailor the terms of the agreement without the knowledge of the applicant, disregard its own underwriting procedures by failing to perform due diligence before entering into the insurance agreement, and pay a flat fee of $25,000 to the signing agent (who, inexplicably, is not the agent of record on the policy) regardless of the value of the policy, is patently absurd. Indeed, these factual allegations, when taken as true, completely undermine Aviva's own explanation for its conduct.

As such, the court finds that plaintiff has alleged his conspiracy cause of action with adequate particularity to meet the Twombly, Iqbal, and FRCP Rule 8(a) pleading requirements. Therefore, Aviva's motion to dismiss plaintiff's SAC, in its entirety for failure to adequately allege a conspiracy, is DENIED.

**B. Breach of Fiduciary Duty**

Aviva moves to dismiss plaintiff's first cause of action for breach of fiduciary duty, arguing it is "legally baseless," and that "California law does not recognize the existence of a fiduciary duty between an insurer and an insured." (MTD at 14 (citing New Hampshire Ins. Co. v. Foxfire, Inc., 820 F. Supp. 489, 487 (N.D. Cal. 1993)).)

While acknowledging the existence of this general rule, plaintiff points to a recognized exception to the rule that establishes a fiduciary relationship between an insurer and its insured when the former holds itself out as "more than just a traditional insurer." (Pl.'s Opp'n, filed June 4, 2010 (Docket #89) 10-11.)  To support the proposition that Aviva and Loomis,

11

as co-conspirators, acted as "insurers-plus," plaintiff contends that the parties "present[ed] themselves as expert financial advisors who provided objective financial advice and, due to the complexity of the investment plan, the plaintiff class was forced to rely on the expertise of the sales agents who were far more knowledgeable about such products." (Pl.'s Opp'n at 12 (citing SAC ¶ 24).) In response, Aviva contends, "these conclusory allegations, unsupported by actual fact, do not transform Aviva, a life insurer, into a fiduciary." (MTD at 14.)

In order to plead a claim for breach of fiduciary duty, the claimant must allege: (1) the existence of a fiduciary relationship giving rise to a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach. Pierce v. Lyman, 1 Cal. App. 4th 1093, 1101 (1991). Here, plaintiff argues Aviva, acting through and in conjunction with Loomis, held itself out as offering objective financial advice to plaintiff and the class members. (SAC ¶ 42; Pl.'s Opp'n at 12.) Because of the complexity of the product offered, plaintiff alleges that he and class members were forced to rely on Aviva and its agent Loomis, thus establishing a fiduciary duty. (Id.) In other words, plaintiff alleges Aviva held itself out as "more than just a traditional insurer." Further, plaintiff alleges: (1) the fiduciary duty was breached when Aviva conspired to advise class members to "purchase investment products and/or pursue investment vehicles that were not reliable, not trustworthy, not well-suited to those particular investors and, ultimately, not at all of the nature that had been represented" (Id. at ¶ 43); and (2) plaintiff and class members sustained damage as a direct and

12

proximate cause of Aviva'a breach.  (id. at ¶ 44.)

Taking these allegations as true and giving plaintiff the benefit of every reasonable inference (Schermerhorn, 373 U.S. at 753), this court concludes that plaintiff alleges sufficient facts to state a cause of action for breach of fiduciary duty. See Estate of Migliaccio v. Midland Nat'l. Life Ins. Co., 436 F. Supp. 2d 1095, 1106-1108 (C.D. Cal. 2006) (denying the defendant's motion to dismiss a breach of fiduciary duty claim because the plaintiffs' factual allegations were detailed enough that the court could not say with certainty that the plaintiffs could prove no set of facts entitling them to relief). Therefore, Aviva's motion to dismiss plaintiff's first of cause of action is DENIED.

**C. Breach of CLRA**

Aviva moves to dismiss plaintiff's fifth cause of action for violation of the CLRA.  Aviva contends that because life insurance does not fall within the ambit of the CLRA, plaintiff's cause of action should be dismissed.  In support of its argument, Aviva points, *inter alia*, to California Supreme Court decisions which stand for the proposition that insurance is not a "good" or "service" under the act.  Fairbanks v. Superior Court, 46 Cal. 4th 56, 61 (2009); Civil Service Employees Ins. Co., v. Superior Court, 22 Cal. 3d 362, 376 (1978) (holding "insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA]").  Plaintiff argues, however, that it is not the Aviva life insurance policies that are the "goods and services" at issue, but rather, "defendant's entire 'investment scheme' whereby [d]efendants defrauded class members '[t]hrough the sale

13

of overpriced, worthless or sham investments.'" (Pl.'s Opp'n at 13 (quoting SAC ¶¶ 16-19).)

The CLRA provides the following definitions: (a) "goods" are defined as: "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not severable from the real property" (Cal. Civil Code § 1761(a)); and (b) "services" are defined as: "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." id. at § 1761(b).

While plaintiff argues that the "overall investment plan and corresponding financial services are the 'goods and services' at issue" in the present case (Pl.'s Opp'n at 13), he fails to cite any legal authority, and none is known to the court, that directly supports a conclusion that *investment services* fall within the purview of the CLRA.  The authorities cited by plaintiff all stand for the proposition that *mortgages* and *loans*, under certain circumstances, are within the boundaries of the CLRA; none of plaintiff's cited authority supports the conclusion that an "investment plan" is covered by the CLRA.

In other words, even if this court were to accept plaintiff's assertion that the overall investment plan, not the life insurance policies, are at issue, there is no authority available against which to judge whether an investment plan is within the purview of the CLRA.  Accordingly, as plaintiff points

14

1  to no authority to support his argument, the question of whether
2  the Aviva insurance policies or the "overall investment plan" are
3  at issue for the purposes of this motion to dismiss need not be
4  addressed here.  For the purposes of this motion, the court will
5  assume that "defendant's services" (SAC ¶ 69) is intended to
6  refer to the sale of Aviva life insurance policies.

On issues of substantive state law, this court is bound to adhere to controlling state precedent.  See <u>Erie Railroad v. Tompkins</u>, 304 U.S. 64 (1938).  Here, the controlling precedent strongly indicates that insurance policies are not within the ambit of the CLRA.  In both <u>Fairbanks</u> and <u>Civil Service Employees</u>, the California Supreme Court held that insurance policies are neither "goods" nor "services" as defined by the CLRA.

Therefore, defendant's motion to dismiss plaintiff's fifth cause of action is GRANTED.  As amendment of this cause of action would be futile, leave to amend is not given.

**D. Aiding and Abetting**

Aviva moves to dismiss plaintiff's sixth cause of action for aiding and abetting, arguing: (1) "a corporate principal cannot aid and abet its agent, because they are not two separate actors as a matter of law" (MTD at 17); (2) "plaintiff has failed to plead actual facts (as opposed to mere conclusions) sufficient to establish that Aviva 'had actual knowledge of the specific primary wrong [it] substantially assisted'" (<u>id.</u> (quoting <u>Casey v. U.S. Bank Nat'l Assoc.</u>, 127 Cal. App. 4th 1138, 1145 (2005)); and (3) "the SAC's allegations fail to establish that Aviva afforded 'substantial assistance' to Loomis and the other

15

1  defendants.  Mere failure to prevent a tort from being committed
2  does not constitute aiding and abetting; substantial assistance
3  is required." (id., at 18 (quoting Fiol v. Doellstedt, 50 Cal.
4  App. 4th 1318, 1326 (1996).)

5      Plaintiff alleges that the instant facts trigger an
6  exception to the "agent's immunity rule," which would expose
7  Aviva to liability under a claim of aiding and abetting.
8  Plaintiff also argues that the SAC alleges sufficient facts to
9  support a cause of action for aiding and abetting.  Finally,
10 plaintiff argues that the legal authority presented by Aviva in
11 support of its motion to dismiss is inapplicable to the instant
12 factual situation.

13     Taking the facts set forth in the SAC as true and drawing
14 all reasonably warranted inferences, the court determines that
15 plaintiff has presented sufficient factual allegations in the SAC
16 to show that (1) Aviva knew that Loomis' conduct constituted a
17 breach of duty (SAC ¶¶ 17-18), and (2) Aviva substantially
18 assisted or encouraged Loomis in achieving the breach.  (SAC ¶¶
19 18, 22-25, 28.)  Therefore, the only remaining question is
20 whether the "agent's immunity rule", or any exception thereto, is
21 applicable in this action.  As a matter of law, a corporate
22 principal and its agents are not two separate actors.  Thus, a
23 corporate principal cannot aid and abet its agents, because doing
24 so would be legally indistinguishable from aiding and abetting
25 one's self.  See Fiol, 50 Cal. App. at 1326; Janken v. GM Hughes
26 Electronics, 46 Cal. App. 4th 55, 78 (1996) ("since a corporation
27 can act only through its employees, the element of concert is
28 missing in the 'aiding and abetting' context").

1    Plaintiff claims, for the purposes of the rule and by way of
2 distinguishing the instant factual situation from Aviva's cited
3 legal authority, that Loomis was not an Aviva employee, but an
4 "authorized insurance agent" who "independent[ly]" sold Aviva
5 products both for Aviva's gain and his own.  (Pl.'s Opp'n at 15.)
6 Plaintiff further argues that Loomis was not acting within the
7 scope of his duties as an Aviva agent when he sold the insurance
8 products and/or shares in the real estate venture.  (Id.)
9 Finally, plaintiff contends that even if the rule is applicable
10 in this case, the present facts indicate that Loomis, in
11 perpetrating the "speculative real estate ponzi scheme," was
12 acting for his own individual benefit as much as he was acting
13 for the benefit of Aviva, thereby triggering an exception to the
14 rule.  (Id. at 15-16.)  As plaintiff emphasizes: "where the
15 alleged agent or employee involved in the conspiracy or aiding
16 and abetting claim is alleged to have carried out the conduct 'as
17 individuals for their own advantage' and not solely on behalf of
18 the principal [then an exception to the rule applies]."  (Id. at
19 15 (quoting Doctors' Company v. Superior Court, 49 Cal. 3d 39, 47
20 (1989)).)

21    The court finds plaintiff's argument that Loomis was not an
22 employee but an independent agent unavailing.  Loomis is
23 described throughout the SAC as an Aviva "agent" or "authorized
24 agent."  (SAC ¶¶ 13, 19, 23, 24, 77.)  Further, nowhere in the
25 SAC does plaintiff present facts or legal authority upon which
26 this court can distinguish an "agent" or "employee" from an
27 "independent agent" for purposes of applying the rule.  However,
28 this court does find the noted exception to the "agent's immunity

17

rule" applicable in the present case.  The facts presented in the SAC, when taken as true, indicate that Loomis' acts were motivated by the prospect of personal gain as much as they were motivated by the profit potential for his corporate principal Aviva.  At the very least, the SAC presents facts that are inconsistent with the notion that Loomis acted "solely on behalf of" Aviva in perpetrating his alleged "ponzi" scheme.  Doctors' Company, 49 Cal. 3d at 47.

As such, at this stage of the proceeding, Aviva cannot invoke the "agent's immunity rule" as a shield to plaintiff's aiding and abetting cause of action.  Therefore, Aviva's motion to dismiss plaintiff's sixth cause of action is DENIED.

**CONCLUSION**

For the foregoing reasons, Aviva's motion to dismiss plaintiff's SAC in its entirety, for failure to adequately allege a conspiracy, is DENIED.  Aviva's motion to dismiss plaintiff's first, fifth, and sixth causes of action are DENIED, GRANTED, and DENIED, respectively.

IT IS SO ORDERED.

DATED: June 28, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE